# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**TIMOTHY M. PAPE**
**JAMIE C. WOENKER**
Carson Boxberger LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT W. EHERENMAN**
Haller & Colvin, P.C.
Fort Wayne, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KELLEY L. KELLY, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No.  02A05-1304-DR-158 |
| | ) | |
| TIFFANY L. KRAVEC, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
Cause No. 02D07-0509-DR-587

**November 26, 2013**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Kelley L. Kelly ("Father") appeals the denial of his motion to correct error following the entry of the trial court's post-dissolution order awarding $5,000.00 in attorney fees to his former wife, Tiffany Kravec ("Mother") in a proceeding involving parenting time.

We affirm.

## ISSUE

Whether the trial court abused its discretion by ordering Father to pay a portion of Mother's attorney fees.

## FACTS

During Father and Mother's marriage, they had one child, T.K., who was born in 2003. The parties dissolved their marriage in September 2006 and entered into a settlement agreement regarding child custody, support, and visitation. Under their agreement, Father and Mother shared legal custody of T.K., with Father having primary physical custody.

Following their dissolution, both parties remarried. Father married Tammy Kelly ("Stepmother"), who had two adult children from a previous marriage. Mother married John Kravec ("Stepfather"), who had a child, N.K., who was close in age to T.K. Father, Mother, and Stepfather were employed by or had served in the military.

In 2007, a petition to modify custody was filed.[1] As part of the custody proceedings, Father, Mother, and their respective spouses underwent psychological evaluations. The psychologist who conducted the evaluations questioned the validity of Stepfather's evaluation and the veracity of his responses. Given this questioned validity and an allegation that Stepfather had used "abusive punishment" with his own child, N.K., the psychologist recommended that T.K. have contact with Stepfather only when supervised by Mother. (App. 81).[2]

On August 11, 2009, the parties entered an Agreed Stipulation ("2009 Agreed Stipulation") to resolve all pending custody matters.[3] In relevant part, paragraph 4(j) provided:

> In the process of this custody action[,] both parties, as well as their spouses, underwent psychological testing. The psychological testing for the parties, as well as [Father's] spouse [Stepmother], was valid. Due to [Mother's] spouse, [Stepfather] having invalid psychological testing, it is agreed that until such time as he completes an independent evaluation by Dr. Stephen Ross, with the results to be shared with opposing counsel, that [T.K.] shall not be left alone with [Stepfather] without [Mother] being present. In the event the parties are unable to reach an agreement on this issue following Dr. Ross's evaluation, said issue shall be submitted to the Court.

(App. 63). In the 2009 Agreed Stipulation, the parties also agreed that each party was responsible for his or her own attorney fees. The trial court entered a nunc pro tunc order

---

[1] The chronological case summary indicates that Mother filed a motion to modify custody in February 2007, but an order from the trial court indicates that Father filed a motion to modify custody sometime after April 2007.

[2] Both parties filed an appendix. We will refer to Father's Appellant's Appendix as "(App.)" and to Mother's Appellee's Appendix as "(Appellee's App.)."

[3] The parties also agreed that Father would have sole legal custody and primary physical custody of T.K., while Mother would have parenting time as set forth in the Indiana Parenting Time Guidelines with certain modifications as set forth in the stipulation.

accepting the 2009 Agreed Stipulation, including the provision that Stepfather's contact with T.K. be supervised until he completed the additional psychological evaluation.

Thereafter, on September 14, 2009, Stepfather completed a psychological evaluation with clinical psychologist, Dr. Stephen Ross ("Dr. Ross"). Dr. Ross noted that the allegation of abuse against Stepfather was determined to be unfounded. Dr. Ross opined that Stepfather did "**not** pose a risk of abuse to either his own daughter [N.K.], or his step-daughter [(T.K.]." (App. 83) (emphasis in original).

Following Stepfather's evaluation with Dr. Ross, Father and Mother were unable to resolve the issue of removing the prohibition on Stepfather's contact with T.K. Therefore, on October 23, 2009, Mother filed a Petition to Modify Court Order, seeking to remove the provision that Stepfather's contact with T.K. be supervised. In her petition, Mother asserted that Father was "unwilling to reach an agreement on this issue" and requested that Father be ordered to pay her attorney fees incurred in relation to the matter. (App. 85). In February 2010, following a case management conference regarding Mother's petition, the trial court scheduled a trial on Mother's petition for September 27, 2010 and appointed a guardian ad litem.

Thereafter, in May 2010, Father issued non-party requests for documents and subpoenas duces tecum, seeking to obtain Stepfather's employment and health care records as well as the health care records of Stepfather's daughter. Mother then filed an objection to Father's non-party discovery requests. In her objection, Mother asserted that Father's non-party requests sent to Stepfather's employers, Ball State University Army ROTC and IPFW University Army ROTC, were a "witch hunt" and "could unnecessarily

4

harm [Stepfather's] military career." (App. 98). Mother also sought to recover attorney fees in connection with the matter. Additionally, the Army notified Father that it could not release the requested information without a written release authorization or a court order. Stepfather refused to sign a release for his and his daughter's medical records.

On September 9, 2010, Father filed a motion to continue the September 27, 2010 trial on Mother's Petition to Modify Court Order. On September 24, 2010, after holding a hearing, the trial court issued an order on Mother's objection to Father's non-party discovery and on Father's motion to continue the trial. The trial court ruled that Father's non-party requests for Stepfather's employment and health care records were relevant to the trial issue, which was "what restrictions, if any, should be placed on [Stepfather's] contact with [T.K.] during [Mother's] parenting time." (App. 118). The trial court, however, ruled that Father's request for Stepfather's daughter's health care records was not relevant. The trial court also granted Father's continuance motion and rescheduled the trial to June 6 and 7, 2011.

In May 2011, the parties filed a stipulation for a continuance of the June 2011 trial due to the fact that Stepfather's employment required him to be in Afghanistan from May 22, 2011 to August 31, 2011. The trial court granted the parties' stipulated continuance and reset the trial for February 24, 2012.

In October 2011, the parties agreed to mediate, and the trial court entered an order granting their stipulation for mediation. Prior to attending mediation, both parties filed a motion to modify parenting time, with Mother filing her motion on November 3, 2011 and Father filing his motion on December 7, 2011. In Mother's motion, she requested

5

additional parenting time during the occasions when Father was out of town or needed child care, and she requested that Father be responsible for her attorney fees. Father's motion generally requested "to have the parenting time *Order* modified." (App. 135).

On January 18, 2012, the parties filed an Agreed Stipulation ("2012 Agreed Stipulation"). In relevant part, the parties agreed that "the requirement that [T.K.] not be left alone with [Stepfather] without [Mother] being present, pursuant to the Court's Order of September 9, 2009, shall be terminated[.]" (App. 138). The 2012 Agreed Stipulation did not contain any provisions regarding Mother's request for attorney fees and noted that a hearing was scheduled for all pending matters. That same day, trial court entered an order granting the parties' 2012 Agreed Stipulation.

The trial court held hearings on the parties' pending matters on February 24, 2012, March 26, 2012, and July 12, 2012. At the beginning of the February hearing, Mother's counsel asked the trial court to award attorney fees to Mother for the fees she incurred to resolve the issue regarding Stepfather's contact with T.K. during Mother's parenting time. Father argued that the attorney fee issue was not preserved and had been resolved by the 2012 Stipulated Agreement. Father also argued that the attorney fee issue was barred by "*res judicata* as a result of the order adopting [the parties'] agreement." (Tr. 14).

On the day of the March 26, 2012 hearing, Father filed a memorandum in opposition to Mother's request for attorney fees. Specifically, Father argued that Mother could not seek attorney fees because the 2012 Agreed Stipulation did not include any provision regarding the recovery of attorney fees. Father alleged that Mother's request

6

for attorney fees was a request for the trial court to modify or set aside its order accepting the 2012 Stipulated Agreement, and he argued that Mother had failed to allege any grounds under Indiana Trial Rule 60(B) to set aside that order.

On the day of the July 12, 2012 hearing, Mother filed a response to Father's objection and a memorandum in support of her attorney fee request. In her memorandum, Mother argued that the omission of an attorney fee provision in the 2012 Agreed Stipulation neither resolved the attorney fee claim nor precluded her from raising the issue. During the hearing, Mother offered into evidence Respondent's Exhibit V, which was an attorney fee affidavit with an itemization of fees attached that revealed that Mother had incurred attorney fees totaling $49,020.34 from September 2009 to July 2012. Father specifically stated that he had "[n]o objection" to the admission of Mother's attorney fee affidavit, and he did not challenge the amount of fees. (Tr. 477).[4] Father also offered into evidence his attorney fee affidavit as Petitioner's Exhibit 17, which revealed that Father had incurred attorney fees totaling $38,329.32 from September 2009 to July 2012 and had estimated fees of $5,000.00 for the three hearing dates. Also during that July hearing, the guardian ad litem testified that she had recommended to Father that Stepfather be allowed to have unsupervised time with T.K. but that Father disagreed and had persisted with the issue.

---

[4] The Transcript does not indicate that the trial court was able to make an official ruling that Mother's attorney fee exhibit was admitted into evidence. After Mother's attorney offered the attorney fee exhibit and Father's attorney stated there was no objection to the exhibit, the two attorneys discussed witnesses and then asked the trial court for a break. The trial court granted the request for a break but did not specifically state that the exhibit was admitted. Nevertheless, it is clear from a review of the record on appeal that the trial court and the parties intended for the exhibit to be admitted into evidence and are operating under the presumption that the exhibit was properly admitted. Accordingly, we will operate under that same presumption.

On December 7, 2012, the trial court issued an order, which, in relevant part, awarded $5,000 in attorney fees to Mother.[5] The trial court issued the following findings and conclusions regarding the attorney fee issue:

[Findings]

* * * * *

8. On August 11, 2009, the parties' mediated agreement was adopted (corrected by a nunc pro tunc order of September, 2009) . . . .

9. In addition, the above referenced order required that the Mother's current spouse, [Stepfather], have no unsupervised contact with the child until (a) he completed a valid psychological evaluation; and (b) the parties agreed to lifting the restriction or further order of court. In 2009 he completed a second evaluation with psychologist Dr. Stephen Ross. Dr. Ross found that [there was] no basis to require the continuation of [Stepfather's] supervised contact with [T.K.].

10. Notwithstanding a favorable report, the Father did not agree to lift the restriction. Accordingly, on October 23, 2009, the Respondent Mother filed her "Petition to Modify Court Order["] and requested that the order restricting [Stepfather's] contact with the child be vacated. A hearing on the petition was set for September 27, 2010. It was subsequently continued to June, 2011. It was again reset by agreement of the parties. The Guardian ad Litem confirmed in her testimony that the Father would not "drop the issue".

* * * * *

12. On January 18, 2012, the parties filed an "Agreed Stipulation" in which the parties acknowledged that [Stepfather] was evaluated by psychologist Dr. Stephen Ross. The parties then agreed, and the court ordered, [Stepfather's] contact restrictions vacated. The agreed order also provided at paragraph (4) that "A hearing is scheduled on all pending matters for February 24, 2012[.]"

* * * * *

[Conclusions]

* * * * *

9. Indiana Code [§] 31-17-4-3 provides that the Court may consider an award of reasonable attorney fees for any action to modify a parenting time order. In making the determination the Court may consider, among other factors, whether a party substantially prevailed.

---

[5] The trial court also denied Father's motion to modify parenting time and granted, in part, Mother's parenting time motion.

10.     [Father's] argument that [Mother's] claim for fees arising over the order restricting [Stepfather's] contact with the child is precluded[.] However, as noted in the above findings all issues other than the lifting of the restriction were preserved for trial.  Thus the Court may reasonably conclude that attorney fees related to the parenting time issue and the [Stepfather] issue are matters for the Court to resolve in this order.

11.     The Court finds and concludes that both parties have responsibility for the long standing parenting time dispute.  However, the Court finds that the costs associated to [Father's] delay in lifting the restriction on [Stepfather's] contact with the child was unreasonable and an attorney fee award for [Mother] and against [Father] in the sum of Five Thousand Dollars ($5,000.00) is warranted.

(App. 33, 36-37).  Aside from the award of $5,000.00 in attorney fees to Mother, the trial court ordered that the parties were responsible for their own respective attorney fees.

Father then filed a motion to correct error, arguing, in relevant part, that the trial court had erred by ordering Father to pay Mother $5,000.00 for attorney fees that she incurred regarding Father's delay in removing the restriction on Stepfather's contact with T.K.  Father alleged that Mother had resolved the issue of Stepfather's contact in the 2012 Stipulated Agreement but had failed to obtain an agreement regarding attorney fees. Father also alleged that Mother had failed to present evidence of the specific fees that she would not have incurred but for Father's delay.  The trial court denied Father's motion in regard to the attorney fee issue, finding that Mother was not precluded from seeking attorney fees by the parties' 2012 Stipulated Agreement; that Mother submitted evidence of her attorney fees via her attorney's fee affidavit; and that award of attorney fees was reasonable.[6]  Father now appeals.

---

[6] The trial court granted, in part, Father's motion to correct error on a parenting time issue not related to the attorney fee issue.

9

DECISION

The sole issue in this appeal is attorney fees. Father argues that the trial court abused its discretion by ordering him to pay $5,000.00 of Mother's attorney fees. We have set forth our review of a trial court's decision to award attorney fees as follows:

> In post-dissolution proceedings, the trial court may order a party to pay a reasonable amount for attorney's fees. The trial court has broad discretion in awarding attorney's fees. Reversal is proper only where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. In assessing attorney's fees, the trial court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors bearing on the reasonableness of the award. In addition, any misconduct on the part of a party that directly results in the other party incurring additional fees may be taken into consideration. Further, the trial court need not give its reasons for its decision to award attorney's fees.

*Bessolo v. Rosario*, 966 N.E.2d 725, 733 (Ind. Ct. App. 2012) (internal citations and quotation marks omitted), *trans. denied.* Additionally, where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous, and we will not reweigh the evidence or reconsider the credibility of witnesses. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011).

Generally, Indiana observes the American rule that a party must pay his or her own attorney's fees absent an agreement between the parties, a statute, or other rule to the contrary. *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 458 (Ind. 2012). Here, the trial court awarded attorney fees under Indiana Code § 31-17-4-3, which provides:

> (a) In any action filed to enforce or modify an order granting or denying parenting time rights, a court may award:

(1) reasonable attorney's fees;

(2) court costs; and

(3) other reasonable expenses of litigation.

(b) In determining whether to award reasonable attorney's fees, court costs, and other reasonable expenses of litigation, the court may consider among other factors:

(1) whether the petitioner substantially prevailed and whether the court found that the respondent knowingly or intentionally violated an order granting or denying rights; and

(2) whether the respondent substantially prevailed and the court found that the action was frivolous or vexatious.

Father argues that the trial court's award of attorney fees was erroneous because: (a) Mother's conduct was the cause of her attorney fees; (b) Mother's attorney fee request was barred by *res judicata*; and (c) the trial court did not hold a separate hearing on the reasonableness of Mother's attorney fees.

A.     Mother's Conduct

Father first argues that the trial court erred by awarding attorney fees to Mother because her attorney fees were a result of her own misconduct and failure to cooperate, not his.

The record before us reveals that in August 2009, Father and Mother signed the 2009 Stipulated Agreement with a provision that Stepfather's contact with T.K. would be supervised by Mother during Mother's parenting time until Stepfather was able to

11

complete an evaluation with Dr. Ross.[7]  Stepfather immediately obtained the evaluation with Dr. Ross, who opined that Stepfather posed no danger to T.K.  Nevertheless, Father refused to remove the restriction on Stepfather's contact with T.K.  In October 2009, Mother filed a petition seeking removal of the restriction and requesting attorney fees in relation to the matter, and the trial court set the matter for trial in September 2010.  Despite a recommendation from the guardian ad litem that Stepfather should have unsupervised contact, Father continued to challenge whether the restriction on Stepfather should remain.  Father then issued non-party discovery requests, which resulted in a need to continue the September 2010 trial.  Thereafter, the parties stipulated to another continuance due to Stepfather's overseas employment, and the trial court set the trial for February 2012.  Ultimately, in January 2012—more than two years after Mother filed her petition to remove the restriction on Stepfather's contact—Father agreed to remove the restriction on Stepfather's contact with T.K.  The trial court acknowledged that both Father and Mother had responsibility in the parenting time dispute, but the trial court determined that Father's "delay in lifting the restriction on [Stepfather's] contact" with T.K. was "unreasonable" and ordered Father to pay $5,000.00 of Mother's $49,000.00 attorney fees incurred.  (App. 37).

Father's argument that the trial court's award of attorney fees was improper because Mother's misconduct was responsible for the delay in resolving the supervised contact issue is nothing more than a request that we reweigh the evidence and witness

---

[7] In his appellate brief, Father erroneously refers to the restriction imposed as a restriction on Stepfather's parenting time with T.K.  We would clarify, however, that it is Mother who has parenting time, not Stepfather.

12

credibility, which we will not do. *See Best*, 941 N.E.2d at 502. Upon review of the record, we conclude that the trial court did not abuse its discretion by ordering Father to pay a portion of Mother's attorney fees. *See Hanson v. Spolnik*, 685 N.E.2d 71, 80 (Ind. Ct. App. 1997) (affirming the trial court's award of attorney fees and explaining that "misconduct that directly results in additional litigation expenses may be properly taken into account in the trial court's decision to award attorney's fees"), *trans. denied.*

B.    Res Judicata

Father also argues that Mother's attorney fee request was barred by *res judicata*, specifically by claim preclusion. Father contends that the parties' 2012 Agreed Stipulation precluded Mother from seeking attorney fees during the parenting time hearing because the stipulation did not address the attorney fee issue.

"The doctrine of *res judicata* prevents the repetitious litigation of disputes that are essentially the same." *Indianapolis Downs*, *LLC v. Herr*, 834 N.E.2d 699, 703 (Ind. Ct. App. 2005), *trans. denied.* Claim preclusion applies when a "final judgment" on the merits has been rendered in a prior action, and it acts to bar a subsequent action on the same claim between the same parties. *Id.* A "final judgment" is one which "disposes of all claims as to all parties[.]" App. R. 2(H)(1). *See also Bueter v. Brinkman*, 776 N.E.2d 910, 912–13 (Ind. Ct. App. 2002) (explaining that a final judgment is one that "disposes of all issues as to all parties, to the full extent of the court to dispose of the same, and puts an end to the particular case as to all of such parties and all of such issues" and "reserves no further question or direction for future determination" (citations and internal quotations omitted)).

13

Here, at the time the parties entered into the 2012 Agreed Stipulation to resolve the Stepfather contact issue, they also each had a motion to modify parenting time pending before the trial court. The 2012 Agreed Stipulation did not contain any provision regarding attorney fees but noted that all pending matters were scheduled for a future hearing. The trial court entered an order approving the parties' 2012 Agreed Stipulation, but that order was not a final judgment because there were still matters pending before the trial court and because it did not dispose of all issues. Accordingly, claim preclusion does not apply because the 2012 Stipulated Agreement was not a *final* judgment. *See, e.g.*, *Pond v. McNellis*, 845 N.E.2d 1043, 1054 (Ind. Ct. App. 2006) (holding that *res judicata* did not apply where a trial court's order was not a final judgment), *trans. denied*. Thus, the attorney fee issue was not barred by *res judicata*.[8]

C.     <u>Hearing</u>

---

[8] In his reply brief, Father alternatively argues that Mother was precluded from seeking attorney fees because silence on the attorney fee issue in the 2012 Agreed Stipulation disposed of the claim. In support of his argument, Father's cites to *Stenger v. LLC Corp.*, 819 N.E.2d 480 (Ind. Ct. App. 2004), *trans. denied* and *Reuille v. E.E. Brandenberger Const., Inc.*, 873 N.E.2d 116 (Ind. Ct. App. 2007), *reh'g denied*, *trans. granted and opinion vacated by Reuille v. E.E. Brandenberger Const., Inc.*, 888 N.E.2d 770 (Ind. 2008). However, this argument, which differs from his *res judicata*/claim preclusion argument, was not raised in his initial brief. Thus, he has waived it on appeal. *See Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 593 n. 6 (Ind. 2001); *see also* Ind. App. R. 46(C) ("No new issues shall be raised in the reply brief.").

    Waiver notwithstanding, we note that one of the cases upon which Father relies, *Reuille*, has been vacated by our Indiana Supreme Court's grant of transfer. Additionally, Father's reliance on *Stenger* is misplaced. In that case, we held that when an offer of judgment under Indiana Trial Rule 68, and acceptance of that offer, and resulting judgment are "completely silent on the issue of attorney's fees and appear to otherwise settle all claims between the parties, the judgment cannot be interpreted to leave the issue of attorney fees open." *Stenger*, 819 N.E.2d at 484. Unlike *Stenger*, here, there was no offer of judgment under Indiana Trial Rule 68 and the 2012 Agreed Stipulation did not settle all claims between the parties.

Lastly, Father argues that the trial court's award of attorney fees to Mother was erroneous because the trial court did not hold a separate evidentiary hearing on the reasonableness of Mother's attorney fees.

Here, the record reveals that during the July parenting time modification hearing, Mother submitted her attorney's fee affidavit to show the amount of attorney fees that she had incurred. The affidavit showed the hourly billing rates for the attorney and paralegal, and attached to the affidavit was a detailed bill that explained the time spent, amount charged, and the specific description of the work done. Father, however, did not challenge the reasonableness of the fees or request an evidentiary hearing relating to attorney fees. Instead, Father specifically stated that he had no objection to Mother's attorney fee affidavit.

"When a party fails to make an objection to the trial court, it cannot raise the objection on appeal." *Wilcox Lumber Co., Inc. v. The Andersons, Inc.*, 848 N.E.2d 1169, 1171 (Ind. Ct. App. 2006). Because Father did not object to the admission of the fee affidavit, the reasonableness of the fees, or the lack of a separate evidentiary hearing, he has waived appellate review of any argument challenging the lack of separate hearing or reasonableness of the fees.

Affirmed.

BARNES, J., and CRONE, J., concur.