Steven THOMAS, by his mother and next Friend Yulondia THOMAS, and Derrick Dausman, by his mother and next friend Connie Dausman, Appellants,

v.

Anne Waltermann MURPHY, in her official capacity as Secretary of the Indiana Family and Social Services Administration, and Gina Eckart, in her official capacity as Director of the Division of Mental Health and Addiction, Appellees.

No. 49A02–0812–CV–1140.

Court of Appeals of Indiana.

Dec. 29, 2009.

Rehearing Denied March 10, 2010.

Gavin M. Rose, Kenneth J. Falk, ACLU of Indiana, Indianapolis, IN, Attorneys for Appellants.

Gregory F. Zoeller, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

MATHIAS, Judge.

Steven Thomas ("Thomas") and Derrick Dausman ("Dausman") (collectively "the Plaintiffs") appeal the trial court's entry of summary judgment in favor of Anne Murphy as secretary of the Indiana Family and Social Services Administration ("FSSA") and Gina Eckhart as Director of the Division of Mental Health and Addiction ("DMHA") (collectively "the State"). The Plaintiffs appeal. We consolidate the issues raised by the Plaintiffs and restate them as whether the trial court erred in determining that the issues were not ripe for determination. Finding no error, we affirm.

### Facts and Procedural History

### I. Facts concerning Derrick Dausman

Derrick Dausman is a developmentally disabled individual. Prior to June 23, 2008, Dausman was a resident of Kosciusko County, Indiana, where he resided with his mother for most of his life, with the exception of a period of time for almost two years during which he was living on his own with constant support from his mother. Dausman has an IQ in the low–to–mid fifties, which places him below the first percentile for an adult his age and in the lower portion of the range for mild mental retardation.

Until late 2006, Dausman received services on an outpatient basis from the Cardinal Center, Inc., which is a community-based, not-for-profit organization that of-

fers support and assistance to individuals with developmental disabilities in northeast Indiana. Through the Cardinal Center, Dausman became employed as a cardboard stacker.

In December of 2006, the State charged Dausman with child molestation. Indiana Code section 35–42–4–3. Dausman was subsequently determined to possess insufficient comprehension to stand trial, in accordance with Indiana Code chapter 35–36–3, and was committed to the DMHA on April 21, 2008. On June 23, 2008, Dausman was transferred to Logansport State Hospital, where his treatment team determined that Logansport State Hospital is the least restrictive environment for Dausman. In August of 2008, Dr. Julio Lozano, Dausman's treating psychiatrist and a member of his treatment team, determined that Dausman may be restored to competency. Appellants' App. p. 287. However, another medical professional, Dr. Henry Martin, indicated that Dausman should be treated on an outpatient basis with training and support in the community. Dr. Martin was not part of Dausman's treatment team.

Importantly, on January 14, 2009, the State filed a petition for regular civil commitment in Wabash Circuit Court pursuant to Indiana Code chapter 12–26–7 (2007). Following hearings on March 30 and April 6, 2009, the trial court determined that "[t]he Petitioner has failed to establish, by clear and convincing evidence, that the statutory criteria for regular commitment have been met."[1] On April 7, 2009, the Wabash Circuit Court ordered that Dausman be released and remain out on bond. The State did not appeal this determination.

## II. Facts concerning Steven Thomas

Thomas is a thirty-nine-year-old developmentally disabled individual who currently resides at the Logansport State Hospital in Cass County, Indiana. Prior to February 13, 2008, Thomas was a resident of Marion County, Indiana, where he resided with his mother. Because of his developmental disability, which is classified as mild mental retardation, Thomas presently has the emotional and cognitive skills of someone who is five or six years of age.

On or about September 12, 2006, the State charged Thomas with child molestation. Indiana Code section 35–42–4–3 (2004 and Supp.2009). Thomas was subsequently determined to possess insufficient comprehension to stand trial, in accordance with Indiana Code section 35–36–3–1 to 4 (2004), and was therefore committed to the DMHA. At the hearing on Thomas's competency, Dr. George Parker, M.D.[2] testified that "an attempt to restoration [to

1. On April 23, 2009, Appellants filed a Motion for leave to file stipulation under seal and for Motion for leave to file pages 3 and 4 of the brief of Appellants under seal. The Stipulation and pages 3 and 4 of the Brief of the Appellants concern a recent decision in a mental health proceeding that the parties believed would assist this court in resolving the Appellants' claims.

Pursuant to this court's order on May 15, 2009, the Stipulation and pages 3 and 4 of the Brief of Appellants shall continue to be excluded from public access pursuant to Indiana Administrative Rule 9(G)(1)(b). On August 10, 2009, this court ordered that the Motions would be granted and that the Parties' Stipulation would be accepted.

2. Dr. George Parker, M.D., is an associate professor of clinical psychiatry and the Director of Forensic Psychiatry at Indiana University School of Medicine, and he examined Mr. Thomas in that capacity. Appellants' App. pp. 204–05, 209, 240–41. Dr. Parker also serves as the Medical Director of the Division of Mental Health and Addiction of the Indiana Family and Social Services Administration. However, Dr. Parker is not a member of Thomas's treatment team. Appellants' App. at 26–27.

competency]" should be made "in an outpatient setting such that it would not require removal from his home where he has lived with his mother for his entire life." Appellants' App. p. 239.

This testimony was in keeping with Dr. Parker's previous assessment, in which he noted that

> Mr. Thomas should not be referred to the Indiana Division of Mental Health & Addiction for inpatient restoration to competence. It is my opinion, with reasonable medical certainty, that Mr. Thomas is unlikely to become competent to stand trial in the foreseeable future, even with restoration efforts, as his cognitive deficits in the areas of concentration, vocabulary and abstract abilities are both significant and longstanding in nature. In addition, placement in a state hospital would be very confusing for [Mr. Thomas], who has lived at home his entire life ... Mr. Thomas would be at risk of victimization at the hands of other, more functional patients in the hospital.

Appellants' App. p. 235.

After conducting a hearing on Thomas's competence to stand trial, on December 14, 2007, the criminal court ordered that Thomas be "committed to the Division of Mental Health and Addiction to provide competency restoration services or enter into a contract for the provision of competency restoration services by a third party in the location where [Thomas] currently resides." Appellants' App. pp. 59–60. Thomas resided at home with his mother at the time.

On February 13, 2008, Thomas was transported to Logansport State Hospital, where he presently resides. Since the transfer to Logansport State Hospital, Thomas has not demonstrated any significant behavioral problems. The medical staff at the hospital has indicated that Thomas has been cooperative, well-behaved, and capable of completing his activities of daily living without assistance. Dr. Lozano and Nancy Maxwell state that Thomas is "thriving" in his new environment. Appellee's App. p. 45. The treatment team at Logansport State Hospital has determined that Thomas may be restored to competency. The most recent testimony of the staff at the state hospital recommended community placement for Thomas in a 24–hour structured setting. Yet, according to the DMHA, Thomas is ineligible for community placement because he was committed after being found incompetent to stand trial for a criminal charge. Additional testimony presented by Thomas establishes that he has the mental capacity of a five or six year old, will not ever be competent to stand trial and, therefore, will never be released from a mental health institution by the State.

### III. Facts concerning the DMHA's Policy

#### A. Competency Restoration Services

The DMHA is responsible for the operation of all state psychiatric institutions in Indiana, including Logansport State Hospital. An individual may be placed in a state institution following an involuntary civil commitment, a voluntary civil commitment, or an adjudication that (s)he is not competent to stand trial for a criminal charge. A treatment team on each unit of a state institution is responsible for the daily care of patients assigned to that unit. The members of the treatment team might include psychologists, psychiatrists, physicians, or social workers who are collectively responsible for creating an individualized treatment plan for each patient and for assisting with the provision of services as determined by their plan. Soon after the arrival of a patient at a state institution, the treatment team begins planning for the patient's eventual release.

Criminal defendants who have been adjudged incompetent to stand trial are com-

mitted to the DMHA for the provision of competency restoration services. The DMHA has not entered into a contract with any third-party for the provision of these services and does not provide these services on an outpatient basis or in community-based placement alternatives. The services are provided only in state psychiatric institutions such as Logansport State Hospital. Importantly, the DMHA has interpreted state law to require those institutionalized criminal defendants who are either mentally ill or mentally retarded to receive competency restoration services indefinitely, regardless of whether a particular patient is likely to regain competency in the future.

Pursuant to state law, the statutory gatekeeper for an individual who has been adjudged incompetent to stand trial is the DMHA. The DMHA has delegated this responsibility to two individuals in the Office of the General Counsel within the Indiana FSSA. As such, these individuals have the responsibility for determining when institutionalized patients are ready for discharge from a state institution. In the case of patients who have been adjudged incompetent to stand trial, if criminal charges are dismissed, these gatekeepers "assist in stepping that person to another gatekeeper who [ ] may return [the] individual to the community." Appellants' App. p. 93.

From 2002 to date, at least 737 individuals have been committed to the DMHA following adjudication that they are incompetent to stand trial for a criminal charge. The vast majority of these individuals have been transferred to Logansport State Hospital, although a significant number of incompetent defendants have also been transferred to other state institutions. During this same period, at least sixty developmentally disabled individuals have been committed to the DMHA following adjudication that they were incompetent to stand trial, including seven such individuals during the first three months of 2008. Most of these individuals were transferred to Logansport State Hospital. As of October 9, 2008, thirteen developmentally disabled individuals who had been determined to be incompetent to stand trial were being held in state-operated facilities.

### B. Non–Restorable Criminal Defendants

At all relevant times, Dr. George Parker has been Medical Director of the DMHA. Appellants' App. p. 214–15. In September of 2007, Dr. Parker authored a paper entitled "Draft White Paper: Incompetent to Stand Trial, Restoration of Competence, and Unrestorable Defendants." Appellants' App. pp. 221, 245–49. According to Dr. Parker, some institutionalized patients who are not presently competent to stand trial may never be restored to competency. Appellants' App. p. 246. Although professionals use the phrase "competency restoration," most of these patients have never possessed competency to begin with. Appellants' App. p. 224. Non-restorable patients fall into one of two broad categories: patients with a developmental disability that has been stable for a substantial period of time and that detrimentally affects the patients' ability to learn material, or patients who have suffered permanent brain damage. Appellants' App. p. 224. Because not all of these patients would otherwise require institutionalization, Dr. Parker noted that "some [criminal] defendants have remained in the state hospital for years, not due to treatment need, but due to their legal status." Appellants' App. pp. 221, 246.

### IV. Facts concerning the Jayne English Unit, Logansport Hospital and Treatment

The Jayne English Unit ("the JEU") at Logansport State Hospital is populated

by persons who have dual diagnoses of mental illness and developmental disability. The Plaintiffs were both placed in the JEU. While in the care of the DMHA, the Plaintiffs have been provided with comprehensive services including education concerning basic legal process, sexual responsibility education, basic academic education, fitness education, community access training, life skills training, and behavior modification training. The treatment team believes that the JEU is the least restrictive environment for the Plaintiffs, and that it provides a level of services that cannot be provided by community programs.

At this time the DMHA does not provide community-based restoration services. It is the belief of the DMHA that such community-based services would not provide the requisite level of supervision and monitoring for those charged with crimes. Also, the DMHA believes that providing outpatient services for competency restoration in the community would require more resources and more funding than the FSSA and the DMHA have available to them.

### Standard of Review

The purpose of summary judgment is to terminate litigation about which there can be no dispute and which may be determined as a matter of law. *Swift v. Speedway Superamerica, LLC,* 861 N.E.2d 1212, 1213 (Ind.Ct.App.2007), *trans. denied.* Our standard of review is the same as that of the trial court. *Id.* Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Naugle v. Beech Grove City Sch.,* 864 N.E.2d 1058, 1062 (Ind. 2007). For summary judgment purposes, a fact is "material" if it bears on ultimate resolution of relevant issues. *Graves v.*

*Johnson,* 862 N.E.2d 716, 719 (Ind.Ct.App. 2007). In negligence cases summary judgment is rarely appropriate because such cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence. *Id.* (citing *Rhodes v. Wright,* 805 N.E.2d 382, 387 (Ind.2004)). Nonetheless, summary judgment is appropriate when the undisputed material evidence negates one element of a negligence claim. *Id.*

### I. Legal Background Concerning Individuals who Lack Sufficient Comprehension to Stand Trial for a Criminal Offense.

When a criminal defendant is thought to lack the ability to understand the court proceedings and assist in his own defense, the trial court sets a hearing and appoints two or three disinterested psychiatrists or psychologists to evaluate the competency of the defendant. Indiana Code section 35–36–3–1(a). None of the appointed persons may be an employee or contractor of a state institution. *Id.*

At the competency hearing, the trial court hears evidence on the defendant's competency. Should the trial court determine that defendant lacks the ability to understand the proceedings and assist in the preparation of the defendant's defense, the trial will be delayed or continued. The defendant is then committed to the DMHA, which "shall provide competency restoration services or enter into a contract for the provision of competency restoration services by a third party in the: (1) location where the defendant currently resides; or (2) least restrictive setting appropriate to the needs of the defendant and the safety of the defendant and others." I.C. § 35–36–3–1(b). If the defendant is serving an unrelated executed sentence at a Department of Correction facility, then the DMHA must provide ser-

vices or contract with a third-party to provide services at a DOC facility agreed upon by the DMHA or third party contractor and the DOC. *Id.*

Under Indiana Code section 35–36–3–3, within ninety days of a defendant's admission to a state institution, the superintendent of the institution must certify to the court "whether the defendant has a substantial probability of attaining the ability to understand the proceedings and assist in the preparation of the defendant's defense within the foreseeable future." If that probability does not exist, the state institution must initiate regular commitment proceedings. If a substantial probability does exist, then the state institution must retain the defendant until the defendant attains the necessary ability and is returned to court for trial or for six months after admission to the institution, whichever occurs first. If the defendant has not attained that ability within six months, the state institution must institute regular commitment proceedings under Indiana Code 12–26. I.C. § 35–36–3–4.

When a person is committed to a state institution, that person is assigned a "gatekeeper" who must provide case management to the individual in both the state institution and the community. I.C. § 12–24–12–9 (2007). The "gatekeeper" must also facilitate and plan the committed individual's transition from the state institution to the community or to another appropriate placement. *Id.* For individuals who have been found to have insufficient comprehension to stand trial under Indiana Code section 35–36–3, the gatekeeper is the DMHA. I.C. § 12–24–12–10(b) (2007).

Under Indiana Code section 35–36–1–1 (2004), "[m]entally ill" means having a psychiatric disorder which substantially disturbs a person's thinking, feeling, or behavior and impairs the person's ability to function; "mentally ill" also includes having any mental retardation.[3]

## II. Ripeness

The Plaintiffs argue that the trial court erred in determining that it lacked subject matter jurisdiction over their claims because those claims were not ripe for adjudication. "Subject matter jurisdiction is the power of a court to hear and determine the general class of cases to which the proceedings before it belong." *Musgrave v. State Bd. of Tax Comm'rs.*, 658 N.E.2d 135, 138 (Ind. Tax Ct.1995). Whether a court has subject matter jurisdiction "depends on whether the type of claim advanced by the petitioner falls within the general scope of authority conferred

**3.** Of note are the conflicting definitions of mental illness and mental deficiency to be found in the Interstate Compact on Mental Health ("Compact"), which Indiana enacted in Indiana Code section 12–28–2–1 (2007), and the definition of mentally ill under Indiana Code section 35–36–1–1.

The Compact defines mental illness as a "mental disease to the extent that a person so afflicted requires care and treatment for that person's own welfare, the welfare of others, or the welfare of the community." The Compact further states that mental deficiency means "mental deficiency as defined by appropriate clinical authorities to the extent that a person so afflicted is incapable of managing the person's self and the person's affairs.

However, the term does not include mental illness as defined in this compact." However, Article 9 of the Compact states that:

No provision of this compact except Article 5 shall apply to any person institutionalized:
(1) while under sentence in a penal or correctional institution;
(2) while subject to trial on a criminal charge; or
(3) whose institutionalization is due to the commission of an offense for which, in the absence of mental illness or mental deficiency, the person would be subject to incarceration in a penal or correctional institution.
I.C. § 12–28–2–1 (2007).

upon the court by constitution or statute." *Id.* Included within subject matter jurisdiction is whether a claim is ripe for review. *Carroll County Rural Elec. Membership Corp. v. Indiana Dep't of State Revenue,* 733 N.E.2d 44, 47 (Ind. Tax Ct.2000). "Ripeness relates to the degree to which the defined issues in a case are based on actual facts rather than on abstract possibilities, and are capable of being adjudicated on an adequately developed record." *Indiana Dep't of Envtl. Mgmt. v. Chem. Waste Mgmt., Inc.,* 643 N.E.2d 331, 336 (Ind.1994).

■ Black's Law Dictionary defines ripeness as the "circumstance existing when a case has reached, but has not passed, the point when the facts have developed sufficiently to permit an intelligent and useful decision to be made." *Black's Law Dictionary* 1328 (7th ed.1999). Furthermore, in deciding ripeness claims, consideration must be given to, among other things, "the need to defer to other branches of government." *Carroll County Rural Elec. Membership Corp.,* 733 N.E.2d at 47, n. 3. When deciding a ripeness issue, the Court must consider: "(1) the fitness of the issues for judicial decision; and (2) the hardship to the parties of withholding court consideration." *Id.* at 48 (internal quotation and citation omitted).

The trial court determined that the Plaintiffs' request for a preliminary injunction preventing the DMHA from placing criminal defendants lacking sufficient comprehension to stand trial in a state institution "when the medical and psychiatric treatment professionals recommend placement in a less restrictive setting" is "purely hypothetical and, therefore, not ripe for adjudication." Appellants' App. pp. 34–35, 19. The trial court noted that the Plaintiffs were asking for a community placement "if and when their treatment team determines such placement appropriate." Appellants' App. p. 19.

A. Competency and Commitment Proceedings

Following the criminal trial courts' determinations that Thomas and Dausman lacked the ability to understand the proceedings and assist in the preparation of their defenses, the respective trial courts committed Thomas and Dausman to DMHA for the provision of the competency restoration services. *See* I.C. § 35–36–1–3. Within ninety days of the defendants' admission to the state institution, here the Logansport State Hospital, the superintendent of the state institution must certify whether Thomas and/or Dausman have "a substantial probability of attaining the ability to understand the proceedings and assist in the preparation of their defenses within the foreseeable future." I.C. § 35–36–3–3(a).

If such a probability does not exist after the first ninety days, then the state institution must initiate regular commitment proceedings under Indiana Code article 12–26. *Id.* However, if such a probability does exist, then the state institution must keep the defendants until they attain the ability to understand the proceedings and assist in the preparation of their defenses or for six months from the date of admission to the state institution, whichever occurs first. I.C. § 35–36–3–3(b)(1),(2). If the defendants are found to have the substantial probability of attaining the ability to understand the proceedings and assist in the preparation of their defenses within the foreseeable future but have not attained that ability to understand and assist within six months from the date of admission to the state institution, then the state institution *must* institute regular commitment proceedings under Indiana Code article 12–26. I.C. § 35–36–3–4

A regular commitment proceeding applies to individuals alleged to be mentally ill and either dangerous or gravely disabled and whose commitment is reasonably expected to last for more than ninety days. If after such hearing and consideration of the record, the criminal defendant is found to be mentally ill and either dangerous or gravely disabled, then the commitment court may either enter an order for "the individual's custody, care, or treatment, or continued custody, care, or treatment in an appropriate facility" or "for the individual to enter an outpatient therapy program under IC 12–26–14." Indiana Code § 12–26–7–5(a) (2009). Those orders continue until the individual is discharged from the facility or the court terminates the commitment. I.C. § 12–26–7–5(b).

### B. Derrick Dausman

■ Dausman claims that his claims are ripe for adjudication because he has been impacted by the DMHA's interpretation of Indiana Code chapter 35–36–3. However, Dausman's factual situation has changed since he appealed the civil trial court's grant of summary judgment in favor of the State. On April 21, 2008, Dausman was determined to be mentally incompetent to stand trial and was committed to the DMHA, pursuant to Indiana Code section 35–36–3–1(b), for the purpose of competency restoration. On June 23, 2008, following a wait for an available bed at a state institution, Dausman was transported to Logansport State Hospital, one of six state hospitals operated by the DMHA. Dausman was sent to a state hospital following commitment because the DMHA only offers competency restoration services at these six hospitals.

On January 14, 2009, six months after Dausman's admission to Logansport State Hospital, the State petitioned for his civil commitment as required by Indiana Code section 35–36–3–3. Following hearings held on March 30, 2009 and April 6, 2009, the Wabash Circuit Court determined that the State, as the petitioner seeking Dausman's civil commitment, "failed to establish, by clear and convincing evidence, that the statutory criteria for regular commitment have been met [i.e. that he is mentally ill and either dangerous or gravely disabled]." *See* Stipulation filed pursuant to this court's order of August 10, 2009, p. 2.; *see* I.C. § 12–26–7–5 (2009); *Jones v. State*, 477 N.E.2d 353 (Ind.Ct.App.1985), *trans. denied.* The trial court ordered that Dausman be released pursuant to Indiana Code section 12–26–7–1 to –5 and allowed to remain out on bond on the underlying criminal charge. Stipulation p. 2.

We believe the State's decision to file the petition for civil commitment of Dausman is an acknowledgement that Dausman has not attained the constitutionally required ability to understand the proceedings and assist in the preparation of his own defense, even after being provided with six months of in-patient competency restoration services. The trial court's further determination that Dausman did not meet the statutory requirements for civil commitment highlights a serious deficiency in the statutory framework for the treatment of the developmentally disabled and the mentally ill in the criminal courts of Indiana. Simply said, the Indiana statutory framework allows courts to recognize the mental illness of a criminal defendant only in terms of guilt for the crime alleged, rather than as a condition that prevents the defendant's ability to form a punishable intention to commit the crime alleged in the first instance.

Current Indiana law does not provide a procedure that would determine whether, at the time of the alleged offense, Dausman had the necessary mens rea to com-

mit the offense. In addition, while our statute mandates competency restoration services for the both the mentally ill and mentally retarded, the DMHA has interpreted the statute to extend to those who will never be able to reach even a minimal level of competency. Our criminal justice system needs an earlier and intervening procedure to determine competency retroactively to the time of the alleged crime. Perhaps we as a society need to consider the concept of a defendant being *unchargeable* because of mental illness under Indiana Code section 35–41–3–6, and not just guilty but mentally ill under Indiana Code chapter 35–36–2 In either case, the commitment proceedings provided for in Indiana Code section 35–36–2–4 would both protect society and best care for the defendant involved. In the limited and unusual circumstances before us, continued pendency of criminal charges might also be dispensed with.

Because the State has effectively acknowledged that Dausman has not attained competency to stand trial within the statutorily-mandated six-month period, we need not determine whether the DMHA must continue providing competency restoration services or provide those services in a different setting. We will not order the DMHA to provide those services to Dausman because "[t]he law does not require the doing of a useless thing." *Stropes by Taylor v. Heritage House Childrens Center of Shelbyville, Inc.,* 547 N.E.2d 244, 247 (Ind.1989). If Dausman will never be competent to stand trial, competency restoration services will provide no benefit to Dausman and will unnecessarily deplete the limited resources of the DMHA.

At present, Dausman has not shown that he has suffered any hardship because of the application of the DMHA's policy regarding incompetent defendants. *Carroll County Rural Elec. Membership Corp.,*

733 N.E.2d at 48. He has been released from Logansport State Hospital and is currently out on bond under the same restrictions as many other criminal defendants. Therefore, Dausman's claims are not ripe for adjudication and the trial court, lacking subject matter jurisdiction, properly dismissed them.

### C. Steven Thomas

■ In Thomas's case, his treatment team has not determined that placement in the community is appropriate. While he argues that the staff at Logansport State Hospital indicated that "[a] structured, 24-hour placement" in the community will be recommended, a more accurate reading of the report is that this would be recommended if and when it is deemed appropriate. Appellants' App. pp. 135, 158. At this point in time, Thomas's treatment team has not recommended community placement or determined that such a placement is appropriate for Thomas.

We have noted that a claim is ripe for adjudication when the issues are "based on actual facts rather than on abstract possibilities[.]" *Ind. Dep't of Envtl. Mgmt.,* 643 N.E.2d at 336. The facts alleged must also "have developed sufficiently to permit an intelligent and useful decision to be made." Black's Law Dictionary 1328 (7th ed.1999).

Thomas's treatment team has not recommended community placement nor has it determined that such a placement is even appropriate for Thomas. While a third-party healthcare professional, Dr. Parker, testified that Thomas should be placed in a community-based healthcare setting, his treatment team did not agree. At present, Thomas's claims are based on the possibility that he would not be allowed to participate in community-based treatment when and if his treatment team recommended such a placement. Such

claims are abstract and lack a factual basis that would allow us to make an intelligent and useful decision. Therefore, Thomas's claims are not ripe for adjudication and the trial court, lacking subject matter jurisdiction, properly dismissed them.[1]

### Conclusion

The civil trial court did not err when it determined that the Plaintiffs' claims were not ripe for adjudication. Under the facts and circumstances before us, we also conclude that the DMHA is not required to continue the provision of competency restoration services to Dausman.

Affirmed.

RILEY, J., and KIRSCH, J., concur.

---

**4.** However, we cannot determine from the record whether Thomas has been civilly committed as required following six months of competency restoration services provided by the DMHA. If he has not had such a hearing, then one should be held pursuant to Indiana Code section 35–36–3–4. If such a hearing has been held then the outcome of that hearing should be reported to the trial court for a determination in accordance with this opinion.