

**FILED**

Aug 20 2015, 10:09 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Scott H. Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Mark D. Boveri
John H. Lloyd
Krieg DeVault LLP
Mishawaka, Indiana

Stacy Walton Long
Krieg DeVault LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Uthman Cavallo, M.D., <br> *Appellant-Defendant,* <br><br> v. <br><br> Allied Physicians of Michiana, LLC, <br> *Appellee-Plaintiff.* | August 20, 2015 <br><br> Court of Appeals Cause No. 71A05-1406-PL-285 <br><br> Appeal from the St. Joseph Circuit Court <br><br> Lower Court Cause No. 71C01-1104-PL-83 <br><br> The Honorable Michael G. Gotsch, Judge |

**Pyle, Judge.**

## Statement of the Case

[1] Appellant/Defendant, Uthman Cavallo, M.D. ("Cavallo"), appeals the trial court's order denying his request for a jury determination of the amount of attorney fees he owed Appellee/Plaintiff, Allied Physicians of Michiana, LLC

("Allied"), after Allied prevailed in a breach of contract claim against Cavallo. Cavallo and Allied were parties to an employment contract, and Allied filed a complaint against Cavallo alleging that he had breached the contract. Cavallo filed a counter-claim and a jury demand, alleging in the counter-claim that Allied, instead, had breached the contract. The trial court conducted a jury trial, and the jury found that Cavallo had breached the contract.

[2] Subsequently, after the trial court entered judgment against Cavallo, Allied filed a petition requesting attorney fees, which was based on a fee-shifting provision in the contract. At a hearing regarding the petition, the trial court concluded that Cavallo's pre-trial jury demand applied to the post-trial petition, and the court established a deadline for the parties to inform it whether they would like to empanel a new jury to consider the issue. Cavallo filed a request for a jury trial on the issue before the deadline, and Allied filed an objection to Cavallo's jury request after the deadline. Thereafter, the trial court denied the jury request, concluding that Cavallo did not have a right to a jury trial, and awarded Allied $89,706.11 in attorney fees.

[3] On appeal, Cavallo argues that: (1) Allied's petition for attorney fees was barred by res judicata and waiver because Allied failed to present evidence on the issue at the trial on the underlying breach of contract claim; (2) the trial court erred when it denied Cavallo's request for a jury trial to determine reasonable attorney fees because he had a right to a jury trial; and (3) the trial court erred in awarding Allied attorney fees because it did not hold a hearing to

determine the reasonableness of the amount awarded and because the award was unreasonable. Also on appeal, Allied requests appellate attorney fees.

[4] We conclude that Allied's claim was not barred by res judicata or waiver because the issue of attorney fees could not necessarily have been raised during trial, such that res judicata or waiver should apply. We also conclude that the trial court did not err when it denied Cavallo a jury trial because Cavallo did not have a right to a jury trial on the reasonableness of attorney fees; nor did the trial court abuse its discretion in determining a reasonable amount of attorney fees to award to Allied. Finally, because it is undisputed that the contract between Cavallo and Allied provided for recovery of attorney fees, we grant Allied's request for appellate attorney fees and remand for further proceedings so that the trial court may determine a reasonable amount.

We affirm and remand for further proceedings.

## Issues

[5] 1. Whether Allied's claim for attorney fees was barred by res judicata or waiver.

2. Whether the trial court erred when it denied Cavallo's request to empanel a jury to decide a reasonable amount of attorney fees.

3. Whether the trial court abused its discretion in awarding Allied attorney fees.

4. Whether Allied may recover appellate attorney fees.

## Facts

Cavallo is a licensed medical doctor, and Allied is an Indiana limited liability company that provides professional medical and surgical services. Cavallo worked with a group called OB/GYN Associates of Northern America ("OB/GYN") from 2001 until late 2009, at which time Allied purchased OB/GYN's assets and entered into an employment agreement with Cavallo ("the Contract"). The Contract contained a covenant not to compete, including a fee-shifting provision applicable in the event that Allied prevailed in enforcing the covenant not to compete.[1]

On March 16, 2011, Allied filed a complaint against Cavallo, alleging that he had violated the covenant not to compete by opening a competing medical practice within twenty miles of Allied's practice. The company requested damages, including the costs of the action and attorney fees, as well as

---

[1] Although Allied included alleged excerpts of the Contract in its brief, neither party included a copy of the Contract in an appendix. We remind the parties that they are responsible for including the items necessary for review in their respective appendices. *See* Ind. Appellate Rule 50(A)(2); App. R. 50(A)(3). Appellants who fail to include the materials necessary for our review risk waiver of the affected issues or dismissal of the appeal. *See Nasser v. State*, 727 N.E.2d 1105, 1110 (Ind. Ct. App. 2000) (finding that Appellant had waived his sentencing argument because he had failed to include the presentence report in the record), *trans. denied*; *Yoquelet v. Marshall Cnty.*, 811 N.E.2d 826 (Ind. Ct. App. 2004) (finding that the Appellant could not prove that the trial court erred in granting summary judgment when the Appellant failed to include all of the documents necessary for review in its Appendix). *But see* App. R. 49 (stating that "[a]ny party's failure to include any item in an Appendix shall not waive any issue or argument"). Nevertheless, we have gleaned evidence of the Contract's contents from the proceedings below.

preliminary and permanent injunctions prohibiting Cavallo from practicing at the competing medical practice. Cavallo filed a counterclaim, arguing that he had developed his competing medical practice with Allied's approval and help and that Allied had breached the Contract when it ejected him from his office, sent him a cease and desist letter, and filed its complaint. Cavallo also demanded a jury trial.

[8] From September 24-26, 2013, the trial court held a jury trial. At the conclusion of the trial, the jury found in favor of Allied. It awarded the company a judgment of $174,916.80, which did not include an amount for attorney fees because Allied had not introduced any evidence or argument regarding its attorney fees at trial.[2] Subsequently, on October 16, 2013, Allied petitioned for an award of attorney fees totaling $89,706.11. Cavallo objected to the petition, arguing that the fee amount was unreasonable and that the request was untimely because Allied should have tried the issue of attorney fees before the jury.

---

[2] The transcript from the underlying breach of contract trial was not requested or included in the record on appeal. Cavallo included the preliminary jury instructions in his Appellant's Appendix, but not the final jury instructions. As a result, there is no evidence in the record that the jury was instructed to consider the issue of attorney fees.

[9]     On December 18, 2013, the trial court conducted a hearing on the fee petition. The court found that, because the Contract specified that Allied could seek attorney fees in the event that it "prevailed" at trial, the cause of action for attorney fees did not necessarily arise until after the jury trial. (Tr. 4). Thus, the trial court concluded that Allied had not waived its attorney fee claim. However, the trial court also held that Cavallo's pre-trial jury demand still applied to the fee claim. As a result, the trial court allowed the parties until January 15, 2014 to decide whether they desired a second jury to be empaneled to determine a reasonable amount of attorney fees.

[10]    On January 14, 2014, Cavallo filed a response to the trial court's ruling, in which he requested a jury trial on the attorney fees. Allied filed an objection to Cavallo's jury request on February 3, 2014. It argued that the trial court should deny the jury request because: (1) Cavallo's previous jury demand applied only to his counterclaim rather than to Allied's original complaint; and (2) Cavallo was not entitled to a jury on the reasonableness of attorney fees under Indiana Trial Rule 38 because the attorney fee claim was an equitable issue that did not trigger a right to a jury trial.

[11]    On May 21, 2014, the trial court entered an order denying Cavallo's jury request and awarding Allied the $89,706.11 in attorney fees it had requested. The trial court found, as Allied had argued, that Cavallo was not entitled to a jury trial on the reasonableness of attorney fees under Trial Rule 38. The trial court also concluded that the amount of Allied's fee request was reasonable based on the prevailing rate of legal services in the geographic location, the

types of legal issues presented, the reputation and experience of counsel, the time necessary to prepare for a multi-day jury trial involving professional experts, and the types of expenses incurred. Cavallo now appeals.

# Decision

On appeal, Cavallo raises three issues: (1) whether Allied's claim for attorney fees was barred by res judicata or waiver; (2) whether the trial court erred when it denied Cavallo's request for a jury; and (3) whether the trial court abused its discretion in awarding Allied attorney fees. In response, Allied raises a fourth issue: whether we should award Allied appellate attorney fees. We will address each of these issues in turn.

## 1. Res Judicata and Waiver

Cavallo contends that Allied's fee claim was barred by the doctrine of res judicata, specifically claim preclusion, because it was "firmly interlaced with the breach of contract claim" such that Allied should have presented evidence on the claim at trial.[3] (Cavallo's Br. 7). He asserts that, because Allied had an

---

[3] Cavallo appears to conflate the doctrines of res judicata and waiver as he claims that the attorney fee request was "waived" as a result of res judicata. (Appellant's Br. 9). Because his argument primarily concerns res judicata, we will primarily address that issue. Nevertheless, because we find that an attorney fee request might not ripen prior to a judgment, we conclude that Cavallo's waiver argument also fails. Waiver is defined as "the voluntary and intentional relinquishment of a known right." *Ryan v. Janovsky*, 999 N.E.2d 895, 901 (Ind. Ct. App. 2013), *trans. denied.* A court may not review an issue that is not ripe. *See Thomas ex*

opportunity to adjudicate the issue at trial—and, indeed, raised the issue in its complaint—but failed to present any evidence on the fees, it could not petition for the fees after the trial court entered the final judgment. In response, Allied argues that its petition was timely, and therefore not barred by res judicata, because its request for fees was not ripe until it became a prevailing party. Allied notes that requesting attorney fees post-judgment is a widely-accepted procedure.

[14] Preliminarily, we must note that Cavallo objected to Allied's petition on grounds of waiver, not res judicata, below and therefore has waived any res judicata argument on appeal. *Boatner v. State*, 934 N.E.2d 184, 187 (Ind. Ct. App. 2010) (stating that a party may not object at trial on one ground and seek reversal on appeal based on another ground and that doing so results in waiver). Waiver notwithstanding, we do not agree that Allied was barred from requesting attorney fees post-judgment on the basis of res judicata.

[15] The "doctrine of res judicata prevents the repetitious litigation of disputes that are essentially the same." *Kelly v. Kravec*, 999 N.E.2d 433, 441 (Ind. Ct. App.

_____

*rel. Thomas v. Murphy*, 918 N.E.2d 656, 662-63 (Ind. Ct. App. 2009), *reh'g denied*, *trans. denied*. Thus, because we conclude here that the issue of attorney fees was not ripe below, Allied did not have the known right to raise the issue of attorney fees and, therefore, could not have waived it.

2013) (quoting *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 703 (Ind. Ct. App. 2005), *trans. denied*). It is divided into two branches: claim preclusion, which Cavallo raises here, and issue preclusion. *Dev. Serv. Alt., Inc. v. Ind. Family and Soc. Serv. Admin.*, 915 N.E.2d 169, 179 (Ind. Ct. App. 2009), *trans. denied.* Claim preclusion is relevant when a "'final judgment'" on the merits has been rendered in a prior action, and it acts to bar a subsequent action on the same claim between the parties. *Kelly*, 999 N.E.2d at 441(quoting *Indianapolis Downs, LLC*, 834 N.E.2d at 703). A "'final judgment'" is one which "'disposes of all claims as to all parties[.]'" *Id.* (quoting Ind. Appellate Rule 2(H)(1)); *see also Bueter v. Brinkman*, 776 N.E.2d 910, 912-13 (Ind. Ct. App. 2002) (quoting *Hudson v. Tyson*, 383 N.E.2d 66, 69 (1978)) ("A final judgment 'disposes of all issues as to all parties, to the full extent of the court to dispose of the same, and puts an end to the particular case as to all of such parties and all of such issues.'").

[16]     The following four factors must be satisfied in order for claim preclusion to apply:

> (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.

*Evergreen Shipping Agency Corp. v. Djuric Trucking, Inc.*, 996 N.E.2d 337, 340 (Ind. Ct. App. 2013) (quoting *Hilliard v. Jacobs*, 957 N.E.2d 1043, 1047 (Ind. Ct. App.

2011), *reh'g denied*, *trans. denied*, *cert. denied*), *reh'g denied*, *trans. denied.* The factor that Cavallo specifically raises is that "the matter now in issue was, or could have been, determined in the prior action." *Id.* He claims that, because Allied raised its fee claim in its complaint, it "could have" adjudicated the matter below and, therefore, it should have been barred from doing so after the judgment was entered. *Id.*

[17] The test generally used for determining whether or not an issue "could have been" decided previously, and as a result should be barred, is the identical evidence test—"whether identical evidence will support the issues involved in both actions." *Hilliard*, 957 N.E.2d at 1047. Here, the determination of Allied's breach of contract claim depended on the evidence regarding the Contract and Cavallo's performance of the Contract. While Allied's attorney fee claim also depended on the language of the Contract, it required additional evidence that the breach of contract claim did not require. Specifically, an award of attorney fees, even pursuant to a contract, must be reasonable. *Stewart v. TT Commercial One, LLC*, 911 N.E.2d 51, 58 (Ind. Ct. App. 2009), *trans. denied.* Rule 1.5 of the Indiana Rules of Professional Conduct sets out a number of factors for determining a reasonable fee, including:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the service properly;
>
> (2) The likelihood, if apparent to the client, that the acceptance of the employment will preclude other employment by the lawyer;
>
> (3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) Whether the fee is fixed or contingent.

*Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281, 287-88 (Ind. Ct. App. 2004). In light of these factors, different evidence was necessary to determine Allied's request for attorney fees than was necessary to prove the underlying breach of contract claim.

[18] Moreover, we agree with Allied and the trial court that Allied was not required to produce evidence of its attorney fees at trial because the issue was not necessarily ripe for adjudication. Allied argues that under the contract it could only seek attorney fees if it were a prevailing party, and it could not become a prevailing party before it was adjudicated as such. Regardless of the terms of the contract, however, our Indiana Supreme Court has held that "[a] request for attorney[] fees almost by definition is not ripe for consideration until after the main event reaches an end. Entertaining such petitions post-judgment is virtually the norm." *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 460 (Ind. 2012). This holding is consistent with one of the factors the trial court must consider when determining whether an attorney fee is reasonable—the time and labor required for the matter. *See Daimler Chrysler Corp.*, 814 N.E.2d at 287-88. We conclude that, logically, an attorney may not know how much

time and labor a matter will require until the matter has reached its conclusion. Therefore, we are unwilling to hold that a party must request attorney fees before a matter has reached its conclusion.[4] Instead, in light of the different evidence necessary to prove Allied's breach of contract claim and the reasonableness of its attorney fees, as well as the fact that Allied's attorney fee petition was not necessarily ripe before the end of the jury trial, we conclude that Allied's attorney fees were not an issue that "could have been determined in the prior action" such that the issue should be barred under the doctrine of res judicata. *Evergreen Shipping Agency Corp.*, 996 N.E.2d 337 at 340.

## 2. Request for a Jury

[19] Next, Cavallo argues that the trial court erred in denying his request for a jury to determine reasonable attorney fees. First, he asserts that Allied's objection to his jury request was not timely because the trial court ordered that the parties respond regarding the necessity of a jury trial by January 15, 2014, and Allied did not file an objection to Cavallo's jury demand until February 3, 2014. Alternatively, he argues that the claim for attorney fees was contractually-based

---

[4] We are not holding that a request for attorney fees is *never* ripe before the conclusion of a matter. There may be factual circumstances permitting a party to request and introduce evidence of attorney fees at trial. However, that is not the case before us.

and therefore legal, rather than equitable, in nature, such that he had a right under Trial Rule 38 to a jury trial on the issue.

[20] In response, Allied contends that it was within the trial court's discretion to consider the objection to Cavallo's jury demand. Allied also argues that: (1) Cavallo's pre-trial jury demand only applied to his counterclaim; and (2) the determination of reasonable attorney fees was equitable, rather than legal, in nature, and thus Cavallo did not have a right to a jury trial.

[21] Preliminarily, we must address Cavallo's procedural argument that the trial court erred in considering Allied's objection to his jury request because it was untimely. In its December 18, 2013 hearing on the fee petition, the trial court determined that Cavallo's pre-trial jury demand was applicable to the post-trial fee claim, even though the trial had already concluded. As a result, the trial court allowed the parties until January 15, 2014 to decide whether they desired a second jury to be empaneled to determine the issue of reasonable attorney fees. On January 14, 2014, Cavallo filed a response to the trial court's ruling, in which he requested a jury trial on the attorney fees. Allied did not object to this response until February 3, 2014, well after the trial court's December 18 hearing and the court's January 15 deadline. As a result, Cavallo now argues that the trial court could not consider Allied's objection because it was untimely.

[22] However, even without consideration of Allied's objection, the trial court still had discretion to change its ruling regarding the applicability of Cavallo's pre-trial jury demand. We have previously concluded that a trial court has wide

discretion to correct errors, and we will reverse any such correction only for an abuse of that discretion. *Paulsen v. Malone*, 880 N.E.2d 312, 313 (Ind. Ct. App. 2008). Accordingly, we conclude that it was within the trial court's discretion to correct its decision in the December 18 hearing that Cavallo's pre-trial jury demand applied to the fee claim.

[23] Next, Cavallo argues that the trial court erred in denying his request for a jury because he had a right to a jury trial. In support of this argument, he cites *Parrish v. Terre Haute Sav. Bank*, 431 N.E.2d 132 (Ind. Ct. App. 1982), *reh'g denied*, *trans. denied.* In *Parrish*, the shareholders of R.P.S. Industries, Inc. signed a promissory note in exchange for a short term capital loan from Terre Haute Savings Bank. *Id.* at 133-34. The promissory note provided for payment of reasonable attorney fees in the event of a default on the loan. *Id.* at 138. A few months later, R.P.S. Industries did default on the note, and Terre Haute Savings Bank filed a claim to recover the remaining amount owed, as well as reasonable attorney fees. *Id.* at 134. The jury awarded the Bank a verdict for damages and attorney fees in the amount of $5,000. *Id.* at 138, 139. The attorney fees award was based on testimony from the Bank's Collection Manager that the Bank's attorney had told her his fee would be $5,000. *Id.* at 139.

[24] On appeal, we reversed the award of attorney fees, finding that the Bank Collection Manager's testimony regarding what the attorney had told her he would charge was not sufficient evidence of the reasonableness of the fees. *Id.* at 139. We noted that, because the jury did not have expertise to determine the

value of the attorney's work, it required more evidence or testimony of the value in order to determine a reasonable fee. *Id.* As a result, we remanded to the trial court to determine a reasonable fee. *Id.*

[25] On rehearing, the Bank requested clarification regarding whether, on remand, the issue of reasonable attorney fees needed to be determined by a jury or the trial court. *Parrish v. Terre Haute Sav. Bank*, 438 N.E.2d 1, 2 (Ind. Ct. App. 1982) ("*Parrish II*"). In our analysis, we cited Trial Rule 39, which provided that "[w]hen trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. Issues upon which a jury trial is so demanded shall be tried by jury . . . ." T.R. 39. Based on this language, we held that, since the shareholders had demanded a jury trial, they were entitled to a jury trial on the issue of reasonable attorney fees upon remand. *Id.* at 3.

[26] Allied argues that we should not rely on *Parrish II* for three reasons: (1) according to Allied, *Parrish* is distinguishable from the instant case because, there, the attorney fees "were not merely a recoverable cost if the bank succeeded in enforcing its rights under the promissory note, but rather they were a part of the bank's damages[;]" (2) Cavallo demanded a jury trial with respect to his counter-claim rather than Allied's claim; and (3), as the trial court concluded, Cavallo did not have a right to a jury trial under Trial Rule 38.

[27] With respect to Allied's first argument, that the attorney fees in *Parrish* were part of the Bank's damages rather than a recoverable cost, we do not find a

distinction between the two cases. In both cases, the attorney fees were contractual in nature, and the prevailing party had to enforce its rights under the legal instrument in order to recover attorney fees. In the case of *Parrish*, the Bank had to prove that the shareholders had defaulted on the promissory note, and here Allied had to prove that Cavallo had breached the Contract. *See Parrish*, 431 N.E.2d at 138 (noting that the promissory note provided for payment of reasonable attorney fees in the event of default).

[28] Next, Allied claims that Cavallo claimed a jury trial with respect to his counterclaim rather than Allied's claim. Specifically, Allied argues that, under Trial Rule 38(B), Cavallo was required to make a jury demand as to Allied's breach of contract claim within ten days of answering it, but he did not. Instead, according to Allied, he filed a separate counterclaim more than ten days after answering Allied's complaint and therefore waived his right to demand a jury trial on the complaint. We do not find this argument persuasive because it is apparent from the record that Cavallo filed his counterclaim requesting the jury trial the same day that he filed his answer to Allied's complaint and, so, was within the ten day time period. Further, because the trial court conducted a jury trial on the issues Allied raised in its complaint, we conclude that it has waived its objection. *Kenwal Steel Corp. v. Seyring*, 903 N.E.2d 510. 516 (Ind. Ct. App. 2009) (stating that waiver is "an election by one to forego some advantage he might have taken or insisted upon").

[29] Finally, Allied argues that we should not rely on *Parrish II* because the determination of a reasonable amount of attorney fees sounds in equity and

Cavallo thus did not have a right to a jury on that issue under Trial Rule 38. This argument was also the basis for the trial court's denial of Cavallo's jury request, as the trial court found that Cavallo had not proven that the determination of a reasonable amount of attorney fees would have been an action at law—as opposed to an action in equity—prior to 1852 such that it would receive a jury trial under Trial Rule 38. This argument is based on the language of Trial Rule 38, which provides that:

> Issues of law and issues of fact, in causes that prior to the eighteenth day of June, 1852, were of exclusive equitable jurisdiction shall be tried by the court; issues of fact in all other causes shall be triable as the same are now triable. In case of the joinder of causes of action or defenses which, prior to said date, were of exclusive equitable jurisdiction with causes of action or defenses which, prior to said date, were designated as actions at law and triable by jury—the former shall be triable by the court, and the latter by a jury, unless waived.

Under Trial Rule 39, [i]ssues upon which a jury trial is so demanded [under Trial Rule 38] shall be tried by a jury," subject to certain exceptions listed in the rule. Allied has not alleged that any of the Trial Rule 39 exceptions apply here.

[30]     In *Songer v. Civitas*, 771 N.E.2d 61 (Ind. 2002), our Indiana Supreme Court went to great lengths to clarify the issue of when a party is entitled to a jury trial under Trial Rule 38. There, the court explained that:

> The right to a jury trial holds a special place in the system of justice, and we guard it against encroachment. That said, it has long been agreed that Article I, Section 20 [of the Indiana Constitution] serves to preserve the right to a jury trial only as it

existed at common law. Drawing as we do from English common law roots and England's symbiotic system of law courts and equity courts, it is a well-settled tenet that a party is not entitled to a jury trial on equitable claims. . . . Trial Rule 38(A) is thus necessarily the starting point. The policy described by Rule 38(A) has existed in substantially the same form for over 120 years, commencing as a legislative enactment. See Rev. St. 1894, Sec. 412; Rev. St. 1881, Sec. 409 (nearly identical statutory forerunners of Trial Rule 38(A)). This legislative enactment and the later judicial rule have informed the historic understanding of the Constitutions meaning on the subject.

*Id.* at 63-64. In other words, causes of action that would have been tried in equity before 1852 may not be tried before a jury, and causes of action that would have been considered "legal" as opposed to equitable before 1852 may be tried before a jury. *See id.* Accordingly, the question we must consider is whether the determination of a reasonable amount of attorney fees is equitable in nature.

[31] This issue has never been addressed in Indiana. However, we find federal precedent on the issue of a right to a jury trial under the Seventh Amendment of the United States Constitution persuasive. As under Trial Rule 38 and the Indiana Constitution, the Seventh Amendment protects the right to a jury trial in "[s]uits at common law," U.S. Const. amend XII, which our Indiana Supreme Court has explained "refers to 'suits in which *legal* rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered.'" *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990) (quoting

*Parsons v. Bedford*, 28 U.S. 433, 447 (1830)) (emphasis in original). The nature of the issues presented and the remedies sought determines whether an action qualifies as "legal." *J.R. Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1115 (10th Cir. 2009).

[32] Traditionally, an ordinary breach of contract claim is considered legal in nature. *Id.* However, federal circuit courts have held that attorney fees awarded as an element of "costs" to a prevailing party in a breach of contract claim are not legal in nature. *Id.* In part, this difference is based on the nature of an attorney fee award. The general rule regarding attorney fees—known as the "American Rule"—is that each party bears its own attorney fees. *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1312 (2nd Cir. 1991). Parties may agree by contract to permit recovery of attorney fees. *Id.*; *Stewart,* 911 N.E.2d at 58. However, because there is no common law right to recover attorney fees, federal courts have held that the Seventh Amendment does not guarantee a trial by jury to determine the *amount* of reasonable attorney fees. *Resolution Trust Corp. v. Marshall*, 939 F.2d 274, 279 (5th Cir. 1991); *Empire State Ins. Co. v. Chafetz*, 302 F.2d 828, 830 (5th Cir. 1962). *See Eastern Trading Co. v. Refco, Inc.*, 229 F.3d 617, 627 (7th Cir. 2000) (finding that the determination of a reasonable award of attorney fees when the award was contractually-based was an issue "to be resolved after the trial on the basis of the judgment entered at trial," not an issue triable by the jury), *amended on denial of reh'g.*

[33] Notably, the Second Circuit has recognized a distinction in cases where an attorney fee claim is based on a contractual provision. In *McGuire*, the Second

Circuit Court of Appeals distinguished between the determination of whether a party may recover attorney fees at all and the determination of the reasonable amount of fees. *McGuire*, 1 F.3d at 1313. The court said that a party has a right to a jury trial on the former but not the latter. *Id.* Its rationale was that:

> an action pursuant to a contract presents traditional common-law contractual issues which should be submitted to a jury . . . but [] the subsequent determination of the amount of attorneys' fees owed presents equitable issues of accounting which do not engage a Seventh Amendment right to a jury trial.

> \*     \*     \*

> [D]efendants' counterclaim for attorneys' fees was a claim for a contractual "legal right," and plaintiff had the right to have a jury decide whether defendants should recover attorneys' fees under the agreement. However, the subsequent action in this case to determine a reasonable amount of attorneys' fees was not an action to enforce "legal rights" pursuant to a contract; rather, such an action was equitable in nature.

*Id.* at 1314-15.

[34]     Here, Cavallo does not dispute that Allied may recover attorney fees under the Contract. Therefore, the distinction that the Second Circuit recognized is not relevant. Instead, it is only relevant that federal courts have held that a party does not have a right to a trial by jury to determine the reasonable *amount* of fees. *See Resolution Trust Corp.*, 939 F.2d at 279; *Empire State Ins. Co.*, 302 F.2d at 830; *McGuire*, 1 F.3d at 1313. In light of this precedent, we conclude that Cavallo did not have a right to a jury trial to determine a reasonable amount of attorney fees. Because, as stated in the federal jurisprudence, such a right was

not recognized at common law and is generally considered equitable in nature, we conclude that his request would likewise fail under Trial Rules 38 and 39.[5]

[35] We note that this conclusion is seemingly at odds with our conclusion in *Parrish II.* However, here we are only addressing whether a party has a *right* to a jury

---

[5] Claims in equity can be traced back to England. Henry L. McClintock, HANDBOOK OF THE PRINCIPLE OF EQUITY 1 (2d ed. 1948). Traditional law courts developed rigid procedures for accepting and deciding cases based on earlier cases, which became known as the common law. *Id.* It was not uncommon for citizens to conclude that the common law courts were "new and crude, undeveloped and incomplete, harsh and unrefined in many of its details." Charles Herman Kinnane, A FIRST BOOK ON ANGLO-AMERICAN LAW 231 (1932). In response, the king "exercised the prerogative of interfering with the ordinary legal procedure to meet the needs of special cases." McClintock at 5. Employing an independent sense of moral justice, these royal chancellors would hear and decide cases without regard for the common law. Kinnane at 231. These chancery courts became known as courts of equity. *Id.* The common law courts, believing in a strict interpretation of rules of pleading and procedure, believed that the equity courts were a royal encroachment on the independence of the "true" judiciary. *Id.* The suspicion surrounding the king's equity courts, followed the colonists to America. *Id.* In fact, the colonies of Massachusetts and Pennsylvania did not establish separate equity courts seemingly unable to "forget how the Court of Chancery had once been made into a tool for the furtherance of royal power." *Id.* at 323. However, most colonial legislatures understood the value of allowing judges to fashion remedies outside the rigid bounds of common law and statutes, and most states have subsequently established a single system of courts with jurisdiction to hear both legal and equitable claims. *Id.* Eventually, our Federal Constitution enshrined this ideal in Article III, Section 2, Clause 1, which states that the "judicial Power shall extend to all Cases, in Law and Equity . . . ." In 1938, the United States Supreme Court and Congress adopted the Federal Rules of Civil Procedure which established a single system for resolving legal and equitable claims. "Purely procedural impediments to the presentation of any issue by any party, based on the difference between law and equity, was destroyed." *Ross v. Bernhard*, 396 U.S. 531, 539-540 (1970). Indeed, Indiana's Constitution of 1816 provided that the judicial power in this state shall extend to "matters of law and equity . . . ." IND. CONST. of 1816, art. V, § 1. While this language was removed from Indiana's current 1851 Constitution, "the General Assembly, following the recommendations of a Civil Code Study Commission created in 1967, repealed a variety of antiquated trial procedural statutes and enacted "rules of civil procedure" that were modeled substantially on the Federal Rules of Civil Procedure. *Budden v. Bd. of School Com'rs of City of Indianapolis*, 698 N.E.2d 1157, 1163 (Ind. 1998). The upshot of this history behind the elimination of most procedural differences between legal and equitable claims is that the most important distinction remains: whether a party is entitled to a jury trial for an equitable claim. Because the determination of a reasonable amount of attorney fees is an issue that was not available at common law, it is equitable and does not carry an entitlement to a jury trial.

trial to determine a reasonable amount of attorney fees under Trial Rule 38. There are instances where a jury may decide whether the amount of an attorney fee award is reasonable, such as where the parties have stipulated to a jury determination on the issue or contractually agreed to such a jury determination. 47 AM. JUR. 2D *Jury* § 47 (2015). We are only addressing a situation where (1) attorney fees have been claimed pursuant to a contractual provision and (2) the parties do not have an agreement that a jury may decide the reasonable amount of attorney fees.

### 3. Attorney Fees

[36] Alternatively, Cavallo argues that the trial court abused its discretion in awarding Allied attorney fees. His argument has two parts: (1) that the trial court abused its discretion in awarding the fees without holding a hearing and (2) that the trial court abused its discretion because the amount of fees it awarded was not reasonable.

[37] When reviewing an award of attorney fees, we apply the clearly erroneous standard to factual determinations, review legal conclusions de novo, and determine whether the decision to award fees and the amount of the award constituted an abuse of the trial court's discretion. *Smith v. Foegley Landscape, Inc.*, 30 N.E.3d 1231, 1239 (Ind. Ct. App. 2015). This is because a trial court has broad discretion in awarding attorney fees. *Benaugh v. Garner*, 876 N.E.2d 344, 347 (Ind. Ct. App. 2007), *trans. denied.* We will find an abuse of that

discretion only when the trial court's decision is clearly against the effect of the facts and circumstances before the court. *Smith*, 30 N.E.3d at 1239.

[38] First, Cavallo argues that the trial court abused its discretion because it failed to hold a hearing to determine the reasonableness of attorney fees. Although the trial court held a hearing on the petition on December 18, 2013, the primary issue at the hearing concerned whether Cavallo had a right to a jury trial. Neither of the parties presented any evidence or argument regarding the reasonableness of Allied's requested fees of $89,706.11. However, Allied did attach to its petition affidavits extensively documenting its counsels' time on the case. In spite of this evidence, Cavallo argues that the trial court's decision was an abuse of discretion absent a hearing.

[39] Cavallo cites to *Stewart* to support his argument that a trial court must hold a hearing to determine reasonable attorney fees. However, we find that the *Stewart* Court remanded for a hearing on the issue of attorney fees because there was no evidence in the record of the time the attorney had expended or the rates charged by the attorney, not because the trial court had failed to hold a hearing. *See Stewart*, 911 N.E.2d at 59. Instead, we find the language in *Wilcox Lumber Co., Inc. v. The Andersons, Inc.*, 848 N.E.2d 1169, 1171 (Ind. Ct. App. 2006), persuasive. There, we stated that "although a hearing on attorney fees is *advisable* in complex cases, it is not required in routine cases[.]" *Id.* (emphasis added). Even though the instant case is arguably complex, not routine, this language in *Stewart* indicates that a hearing is merely "advisable"—not required—even in a complex case.

[40] This interpretation is consistent with our holding in *Nesses v. Specialty Connectors Co., Inc.*, 564 N.E.2d 322, 328 (Ind. Ct. App. 1990). There, although the trial court did hold a hearing on attorney fees, the parties did not provide a transcript of the hearing on appeal. *Id.* Even without the transcript, we held that the judge's knowledge of the proceedings and counsels' submitted affidavits of billing statements, which included the dates, times, fees, and nature of the services rendered, were sufficient to determine reasonable attorney fees. *Id.* at 326, 328. In light of this precedent, we conclude that the detailed billing statements Allied provided the court here, combined with the trial court's knowledge of the proceedings, were sufficient for the trial court to determine reasonable attorney fees. Accordingly, the trial court did not abuse its discretion by failing to hold another hearing on the fees.

[41] Second, Cavallo argues that the amount of attorney fees the trial court awarded Allied was unreasonable because it was "a fairly straightforward contract dispute with no real novel questions of law" and because the trial court did not consider the Indiana Rules of Professional Conduct's factors for determining the reasonableness of an attorney fee award. (Cavallo's Br. 13). We review the amount a trial court awards for attorney fees for an abuse of discretion. *Storm Damage Specialists of America v. Johnson*, 984 N.E.2d 660, 667 (Ind. Ct. App. 2013). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

[42] Notably, even where, as here, the parties have agreed to attorney fees by contract, the award of attorney fees must be reasonable. *Bruno v. Wells Fargo*

*Bank, N.A.*, 850 N.E.2d 940, 950 (Ind. Ct. App. 2006). Judicial notice of the reasonableness of attorney fees is permitted in certain routine actions, such as dissolutions of marriage, in which modest fees are sought. *Smith*, 30 N.E.3d at 1240. However, where the amount of the fee is not inconsequential, there must be objective evidence of the nature of the legal services and the reasonableness of the fee. *Id.*

[43] This Court has noted that "the hours worked and the rate charged are a common starting point for determining the reasonableness of a fee," but a trial court may consider a number of factors. *Stewart*, 911 N.E.2d 51 at 59. The trial court may look at the responsibility of the parties in incurring the attorney fees, and the trial judge has personal expertise he or she may use in determining reasonable attorney fees. *Weiss v. Harper*, 803 N.E.2d 201, 208 (Ind. Ct. App. 2003). In addition, as stated above, Indiana Professional Conduct Rule 1.5(a) delineates the following factors for determining a reasonable fee:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the service properly;
>
> (2) The likelihood, if apparent to the client, that the acceptance of the employment will preclude other employment by the lawyer;
>
> (3) The fee customarily charged in the locality for similar legal services;
>
> (4) The amount involved and the results obtained;
>
> (5) The time limitations imposed by the client or by the circumstances;
>
> (6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) Whether the fee is fixed or contingent.

[44] Here, Cavallo argues that the trial court abused its discretion because it did not consider each of the factors listed in Indiana Professional Conduct Rule 1.5(a) and because the amount awarded was unreasonable. We disagree. First, Cavallo does not cite any authority for the proposition that the trial court was required to consider every factor in Rule 1.5(a), and we do not find any such requirement. To the contrary, the first comment to the rule provides that "[t]he factors specified in (1) through (8) are not exclusive. Nor will each factor be relevant in each instance." Ind. Professional Conduct Rule 1.5(a), cmt. Similarly, our Indiana Supreme Court has stated that "our Rules of Professional Conduct give us *guidance* as to factors to be considered in determining the reasonableness of attorney fees." *Order for Mandate of Funds Montgomery Cnty. Council v. Milligan*, 873 N.E.2d 1043, 1049 (Ind. 2007) (emphasis added). This language does not imply a mandatory requirement.

[45] In addition, it is clear that the trial court did consider several of the factors set out in the rules of professional conduct. The court found that the amount of attorney fees requested was

> based on the prevailing rate of legal services in this geographical location, and that the request for fees and expenses [was] otherwise reasonable based on the types of legal issues presented, the reputation and experience of counsel, the time necessary to prepare for a multi-day jury trial involving professional experts, and the types of expenses incurred.

(App. 20). Also, the court reviewed affidavits Allied's counsel had submitted that extensively documented the work each of Allied's attorneys performed on the matter, including the hours they worked, the hourly rates they charged, the nature of their services, and the legal issues involved. In light of this evidence, we conclude that the trial court did not abuse its discretion in determining the reasonableness of the attorney fees it awarded Allied.

### 4. Appellate Attorney Fees

[46] Finally, Allied requests that we award it appellate attorney fees for the work that its attorneys completed in this appeal. We have previously held that when a contract provision provides that attorney fees are recoverable, appellate attorney fees may also be awarded. *Humphries v. Ables*, 789 N.E.2d 1025, 1036 (Ind. Ct. App. 2003). As it is undisputed here that the Contract provides for attorney fees in the event that Allied prevails in enforcing the Contract, and Allied has prevailed on appeal, we grant Allied's request and remand to the trial court for a determination of reasonable appellate attorney fees to award Allied.

[47] Affirmed and remanded for further proceedings.

Bailey, J., and May, J., concur.